## Haldeman *versus* Duncan *et al.*

1. Duncan bought of Haldeman three hundred barrels of oil to be delivered "on first water," and paid all the purchase-money. Haldeman pointed to Duncan a larger quantity of oil at the place of delivery, and requested him to select his three hundred barrels. Duncan tested the oil and said he was satisfied with it, but went away without selecting or separating the amount purchased. *Held*, that there was no delivery; the sale was not completed and no title passed to Duncan.

2. A flood having swept away all Haldeman's oil at the place of delivery, Duncan afterwards demanded delivery of the three hundred barrels oil, which was refused by Haldeman. *Held*, that Duncan was entitled to recover the price paid by him.

3. Before any property in goods sold can pass, they must be ascertained, designated and separated from the stock or quantity with which they are mixed.

ERROR to the Court of Common Pleas of *Allegheny county*.

The claim of Duncan & Williams, the plaintiffs below, and defendants in error, was for $3862.50, with interest on $1781.25, part of that sum, from February 14th 1865, and on $2081.25, the remainder, from March 7th 1865. The indebtedness arose, as the plaintiffs alleged in their affidavit, as follows:—On February 14th 1865, they bought of Haldeman, defendant below, three hundred barrels of oil for $3862.50, to be delivered "at Oil City, ready for shipment on first water," * * "or rise in Allegheny river and its tributaries."

Plaintiffs then paid $1781.25 on the contract, and on March 7th paid the balance, $2081.25. The plaintiffs alleged that the first water occurred March 6th, that they demanded the delivery of the oil on or about March 21st, and that the defendant refused to deliver it.

In his affidavit of defence, the defendant stated that when the last payment was made, he took one of the plaintiffs from his office at Oil City to the yard and landing on the bank of Allegheny river, pointed to him a large lot of oil ready for shipment, and requested him to select the three hundred barrels bought by him; that the plaintiff proceeded to test the oil

in different barrels, with a view, as defendant believed, of selecting the three hundred barrels, and after being engaged some time in "testing said oil, expressed himself satisfied, and went away without separating or removing said three hundred barrels from the larger bulk of oil lying there ready for shipment;" that the plaintiffs neglected and refused to remove said oil from the premises of the defendant until 17th March, when an extraordinary flood in the Allegheny river overflowed defendant's yard and landing, and washed away said oil, and it was lost. The defendant claimed that there was a good delivery of the oil; and stated that the river continued in good navigable order until the flood, and the oil might have been removed by the plaintiffs to a place of safety.

The court rendered judgment for plaintiffs for $3900.21, for want of a sufficient affidavit of defence.

The defendant removed the case into this court, and assigned for error that "the court erred in entering judgment against the defendant."

*Hampton* and *Moreland*, for plaintiff in error.—Neither the affidavit of plaintiffs nor the declaration state that at the "first water," March 6th, they were at Oil City, ready to accept the oil, as should have been averred: Robson v. Tyson, 10 Wright 286.

The case turns upon the question, was there a delivery? The price was paid; bill of sale passed; the parties were in view of barrels, and, as between vendor and vendee, nothing more was necessary. In addition to this, were the testing of the oil by plaintiff, and expressing himself satisfied with it. Plaintiffs should have objected to the mode of delivery, or be bound by their acquiescence. The seller is considered as having done his duty when he has done everything incumbent upon him to enable the buyer to take the goods: Story on Sales, § 301; Wood v. Tassell, 6 Ad. & El. 234. The intention of the parties as to the vesting of the title at the time of sale, and as to delivery, must control the transaction: Winslow, Lanier & Co. v. Leonard, 12 Harris 17; Smyth v. Craig, 3 W. & S. 14; 12 Pick. 76; 20 Id. 230. The title has been held to vest when there is no measurement: Wilkes et al. v. Ferris, 5 Johns. 345; Chaplin v. Rogers, 1 East 192; Harris v. Watson, 2 B. & C. 540; Valpy v. Gibson, 4 C. B., M. G. & S. 837; 13 Pick. 175; 5 Met. 432; 6 Rand.; 6 W. & S. 337. Where creditors are claiming or the allegation is that goods are sold fraudulently, or where the vendor has not received all the purchase-money, and in cases of stoppage *in transitu*, the law is exacting, but where the question is simply between vendor and vendee so great strictness is not required: Shaw et al. v. Levy, 17 S. & R. 99; Hazard v. Hamlin, 5 Watts 201. Delivery is not necessary to vesting title, it is only evidence of the vest-

ing: McCandlish *v.* Newman, 10 Harris 465; 2 Kent's Com. 492; Dennis *v.* Alexander, 3 Barr 50; Scott *v.* Wells, 6 W. & S. 368; Tarling *v.* Baxter, 6 B. & C. 360; Fletcher *v.* Howard, 2 Aiken's Verm. R. 115; Potter *v.* Cowan, 1 Meigs's Ten. R. 22; Hanson *v.* Meyer, 6 East 614; Bloxam *v.* Sanders, 4 B. & C. 941; Simmons *v.* Swift, 5 Id. 857. If, after pointing out the oil, the vendor had refused to let vendee remove the oil, could not the vendee have maintained replevin? Harlan *v.* Harlan, 3 Harris 507.

Delivery may be made in a slight manner: Leedom *v.* Phillips, 1 Yeates 529; Chase *v.* Ralston, 6 Casey 541. Circumstances may dispense with formal delivery, and separation of goods sold: McVicker *v.* May, 3 Barr 225; Dunlop *v.* Bournonville, 2 Casey 74; Hugus *v.* Robinson, 12 Harris 9; Faunce *v.* Leslie, 6 Barr 121; Forsyth *v.* Matthews, 2 Harris 100. If the goods be ponderous, or bulky, manual delivery is not required: Story on Sales, § 311; constructive delivery is sufficient: Searles *v.* Reeves, 2 Esp. R. 398; Harman *v.* Anderson, 2 Campbell's R. 243; Chaplin *v.* Rogers, 1 East 192; Wilkes *v.* Ferris, 5 Johns. R.; Atkinson *v.* Waling, 2 T. R. 462; Hodgson *v.* Le Bret, 1 Campb. R. 233; Manton *v.* Moore, 7 T. R. 69; Jewett *v.* Warren, 12 Mass. 300; Rice *v.* Austin, 17 Id. 197; Badlam *v.* Tucker, 1 Pick. 389; Holmes *v.* Crane, 2 Id. 607; Gardner *v.* Howland, Id. 399; Chapman *v.* Searle, 3 Id. 38; Peters *v.* Ballistier, Id. 495; 7 Id. 32, 36; Tuxworth *v.* Moore, 9 Id. 347; Butterfield *v.* Baker, 5 Id. 522. The seller is to keep the article sold till the time of delivery with ordinary care, and doing so is not liable for loss: 1 Parsons on Contracts 445; Willard *v.* Perkins, 1 Busb. L. 253; Crawford *v.* Bennett, 2 Comstock 238; Horr *v.* Barker, 6 Cal. 603; How *v.* Baker, 11 Id. 393; Kimberly *v.* Patchen, 19 N. Y. (5 Smith) 330; Means *v.* Williamson, 37 Marine 556; Morgan *v.* Perkins, 1 Jones Law (N. C.) 71; Davis *v.* Adams, 18 Ala. 264.

*Hamilton & Acheson*, for defendants.—Goods sold must be ascertained, designated, and separated from the stock with which they are mixed before property can pass: 2 Kent's Com. 692. If anything remains to be done to ascertain the quantity, identity or individuality of things sold, such as—selection and separation from the mass in bulk or from a number of articles of similar character, right of property and risk are not transferred. See also Blackburn, p. 122 *et seq.* 57 L. Lib. 67, and cases there cited: 1 Parsons on Cont. 441; Chitty on Cons. 441; Story on Sales, § 296 *a*. McCandlish *v.* Newman and Winslow *v.* Leonard are against plaintiff in error, for it is said, selection from a mass of similar articles is a *sine qua non* to a complete sale. Hutchinson *v.* Hunter, 7 Barr 140, rules the present and is even

[Haldeman v. Duncan.]

stronger, for the sale there was from a *particular* lot of molasses, here it was *any* 300 barrels of oil.

The opinion of the court was delivered, November 2d 1865, by READ, J.—This is a judgment for want of a sufficient affidavit of defence. The plaintiffs' affidavit of claim discloses a good cause of action—a purchase of 300 barrels of oil—a payment of the price, and a refusal of the defendant to deliver the oil according to contract. The defendant in his affidavit admits the purchase, the payment of the purchase-money, and his contract to deliver, but alleges that he did deliver the oil to the plaintiffs.

The contract was made at Oil City, on the 14th of February 1865, and is in these words :—

" Messrs. Duncan & Williams

Bought of William Haldeman, 300 barrels of crude oil in good new barrels, and in good condition—said oil to be clean from water and slush, and to be about 44° gravity ; said oil to be delivered at Oil City, ready for shipment on first water, at 12.87½ per barrel, $3862.50.

I also agree to pay on the return of said barrels in Pittsburgh, $3 each in good order.

Received on this bill, $1781.25. Balance to be paid in twenty days," which balance $2081.25, was paid on the 7th March 1865, and the defendant put the following receipt on this bill :—

" Oil City, March 7th.

Received payment in full.          WILLIAM HALDEMAN."

The first water or rise in the Allegheny and its tributaries, was on or about the 6th March, and the demand and refusal to deliver were on the 21st March. The defendant in his affidavit claims that he did deliver the 300 barrels of oil on the 7th March, and that is the sole question. If these barrels were delivered to the plaintiffs on that day, and became their property, then their loss by the flood on the 17th March, must fall on the plaintiffs, and they cannot recover in this action.

Then was there such a delivery on the 7th March? and for this we must look to the defendant's affidavit, in which he uses this language : " On the 7th day of March 1865, after the payment of the money and the signing of the receipt therefor, this deponent took the plaintiff out from his office at Oil City, where said money was paid, to the yard and landing of the deponent, on the bank of the Allegheny river, in Oil City, and pointed out to the plaintiff a large lot of crude oil, which deponent then had lying there ready for shipment, and requested him to select out and take therefrom the 300 barrels to which he (plaintiff) was entitled under his contract ; that plaintiff then and there proceeded to test the gravity in different barrels, with a view, as

[Haldeman *v.* Duncan.]

deponent believed, of selecting the 300 barrels to which he was entitled under said contract; and after being engaged some time in testing said oil, and expressing himself satisfied therewith, went away without separating or removing said 300 barrels from the larger bulk of oil then lying there ready for shipment."

It is clear, from their statement, that the plaintiff never selected the 300 barrels, nor is there any evidence that he intended to do it. He certainly never separated them from the large lot of crude oil, nor did he mark or designate them in any way, so that the identical barrels might be selected from the large number of barrels, which may have been many hundreds or thousands. It is not alleged that the defendant did any of these acts of separation marking a selection.

"The rule, I take it," says Mr. Justice Rogers, "is now too firmly settled to be shaken, that the *goods sold must be ascertained, designated, and separated from the stock or quantity with which they are mixed, before the property can pass*—until this be done, it remains the property of the vendor, and not of the vendee" (Hutchinson *v.* Hunter, 7 Barr 145). The same doctrine is laid down in very apt language in Addison on Contracts, 42, 3, covering completely a case like the present.

The contract contemplated no particular quantity of oil then in existence, but might be filled by any oil then existing, or which might be produced before the time of delivery. The vendees paid their money and performed their part of the contract, and if the vendor had selected and separated the 300 barrels from the large lot, and notified the purchasers it was ready for delivery, then his part would have been performed, and the property would have been vested in the vendees.

As there was, therefore, no delivery on the 7th March, the property of the large lot, including the 300 barrels, remained and was in the vendor on the 17th March, when the flood swept the whole away.

When, therefore, the demand for the delivery of the 300 barrels on the 21st March was made by the plaintiffs, they should, in conformity to the contract, have been delivered to the plaintiffs, but this the defendant utterly refused to do.

We do not think the affidavit of defence was sufficient, and, therefore,

The judgment is affirmed.